IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | | |
|---|---|---|---|
| LEN JACKSON and JAMES PURDUE, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | | |
| v. | ) | CASE NO. 2:03-cv-313-F | |
| | ) | WO | |
| LSI INDUSTRIES, INC. d/b/a LSI | ) | | |
| Petroleum/Convenience Store Division, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM OPINION AND ORDER**

This lawsuit arises out of allegations that Defendant LSI Industries, Inc. ("LSI") sold

light retrofit kits invented by the Plaintiffs without providing them appropriate compensation.

The cause is before the Court on LSI's Motion for Summary Judgment (Doc. #19), filed

December 5, 2003, which addresses both of Plaintiffs' remaining claims: breach of implied

contract (Count II) and conversion (Count III).  Upon consideration of the Motion, the Court

finds that it is due to be GRANTED.

**I.  JURISDICTION AND VENUE**

Jurisdiction over Plaintiffs' claims is proper pursuant to 28 U.S.C. § 1332 (diversity

jurisdiction), as the amount in controversy exceeds $75,000 and there is complete diversity

of parties.  The parties do not contest personal jurisdiction or venue, and the Court finds

adequate allegations of both.

1

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of

the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

### III.  FACTS[1]

Plaintiff James Perdue ("Perdue") is the owner of the Perdue Folmar Company, which furnishes and installs service station canopies.  Plaintiff Len Jackson ("Jackson") is the director of store facilities for Junior Food Stores of West Florida, Inc., which does business as Tom Thumb convenience stores ("Tom Thumb").  As director of store facilities, Jackson is responsible for construction and maintenance of all buildings, including the canopies over the gasoline pumps.

In late 1996 or early 1997, Perdue was contracted to install eight lights in the service station canopy at a Tom Thumb convenience store in Baker, Florida.  Perdue and Jackson determined a way to take Scottsdale lights, which are LSI products, and retrofit them into the existing 2' x 2' light box housings.  Perdue installed the lights, which are in plain view to anyone at the location, and specifically showed the lights to about half a dozen employees

---

[1]The Court has not considered the hearsay testimony included in the deposition of Lucas Ford because it finds that it is not relevant to the outcome of the motion for summary judgment.  The Court, therefore, makes no judgment as to whether the testimony is inadmissable hearsay as the Defendant argues or whether it would be admissible as a party opponent admission.

of Tom Thumb.

The next day or so after the installation, Perdue contacted Lucas Ford ("Ford") at Lucas Ford & Associates, from whom he purchased LSI lighting products. Ford apparently believed Ford to be an employee of LSI at the time. Ford and Perdue discussed the invention at Perdue's office, and Perdue told him that he had been able to put a Scottsdale light in an existing 2' x 2' light box. Ford states that at this time LSI had not yet developed the Scottsdale Super Kit, which does the same thing; at that time LSI was not selling any product that did what Perdue had done. Ford gave Perdue the name and phone number of someone at LSI to speak to about the new invention. Perdue did not ask Ford to keep anything he told him confidential but testifies that he considered the conversation to be confidential.

Perdue then called the recommended LSI employee, whom he believes to have been in the design and engineering department at LSI in Cincinnati.[2] Perdue explained who he was, described the problems he saw with the existing Scottsdale retrofit kit, explained the design that he had come up with, and stated that he had installed lights using his design. Perdue did not state that anything he said was confidential or that he was expecting compensation for the idea, but believes these ideas to have been understood. The LSI employee gave Perdue a fax number and asked him to send a drawing of the design. Perdue

---

[2]Ford states that he probably gave Perdue the name of John Page or Tom Beatty, but no one can identify exactly with whom Perdue spoke. LSI denies that Perdue spoke with anyone at LSI.

created a two-page drawing and faxed it to LSI.

Within the next 48 hours, Perdue spoke to the LSI employee again, who told Perdue that the invention was unsightly and would not work. Perdue and Jackson had no further contact with LSI regarding the invention. In October of 1997, Perdue and Jackson attended a trade show where LSI was displaying and selling the Scottsdale Super Kit, which was identical to their invention.

## IV. DISCUSSION

*A. Count II: Breach of Implied Contract*

Defendant argues that no implied contract was formed between the Plaintiffs and LSI because there was no agreement that LSI would keep the information confidential or provide any compensation to the Plaintiffs. Plaintiffs assert that a contract was formed in this case because LSI's solicitation of the Plaintiffs' idea shows an intent to contract.

Under Alabama law, "[n]o contract is formed without an offer, an acceptance, consideration, and mutual assent to terms essential to the contract. A contract implied in fact requires the same elements as an express contract." *Steiger v. Huntsville City Bd. of Educ.*, 653 So.2d 975, 978 (Ala. 1995) (citation omitted). "The only difference between express contracts and implied contracts is the method of expressing mutual assent." *Berry v. Druid City Hosp.*, 333 So.2d 796, 799 (Ala. 1976). To have an enforceable implied contract, the facts must show circumstances from which an agreement can be inferred. *Id.*

Plaintiffs then cite to *Nimmer of Copyright*, § 16.05 (2003 Ed.), which states that

> If Defendant is requesting that the Plaintiff disclose his idea, most Courts will find that such requests or solicitation implies a promise to pay for the idea, if the Defendant uses it. . . . If Defendant makes such a request, even if he attempts to frame the request in ambiguous or exculpatory language, most Courts will nevertheless imply a promise to pay if the idea is used.

Plaintiffs offer no Alabama cases following this principle, stating only that it is "consistent with existing Alabama law." (Resp. to Mot. Summ. J., 7.) However, even assuming that Nimmer is representative of current Alabama law, the Plaintiffs' argument fails because, as explained below, they have not demonstrated that asking for a faxed sketch after Perdue explained his idea is sufficient to constitute solicitation. *See also Nimmer on Copyright* § 16.05 (discussing how an implied promise to pay will not be found when an idea submission occurs without solicitation).

The court in *Reeves v. Alyeska Pipeline Serv. Co.* 926 P.2d 1130 (Alaska 1996), addressed this same issue in the context of an idea about a pipeline tourist attraction. There, the parties first spoke about the idea and then the Defendant requested a written proposal. *Reeves,* 926 P.2d at 1141. The court found that an implied contract would exist if the Defendant asked the Plaintiff about his idea and then asked for written documentation but not if the Plaintiff initially volunteered his idea, regardless of the Defendant's subsequent request for documentation. *Id.* The court found a genuine question of material fact existed only because the circumstances of the initial disclosure were unclear. *Id.*

In this case, however, the circumstances of the initial disclosure are not unclear. It is

6

undisputed that Perdue's call to the LSI employee was completely unsolicited.  In this unsolicited phone call, Perdue spoke to the LSI employee "at length." (Dep. Perdue, 46:17, 63:23.) Perdue explained the problem of having the rewire the entire canopy and explained specifically how his invention would remedy the problem. (*Id.* at 52-55.) He states that the LSI employee "knew immediately what I had done. . . . They understood what I had done, they sure did." (*Id.* at 53:5-11.) Because Perdue provided significant information about his idea in the unsolicited phone call without making any mention of confidentiality or payment, it cannot be said that LSI showed intent to enter into a contract on those terms by then asking him to send a drawing.   Therefore, the Defendant's Motion for Summary Judgment is due to be GRANTED as to the claim of breach of implied contract.[3]

---

[3]Plaintiffs also note that "an implied contract arises where there are circumstances which, according to the ordinary course of dealing and common understanding, show a mutual intent to contract." *H.M. Freeman v. First State Bank of Albertville*, 401 So.2d. (Ala. 1981).   Although they provide no argument as to this point of law, Plaintiffs state in the facts section that Perdue's conversation with the LSI employee was understood to be confidential based upon general business practice.  Specifically, Perdue states, "I think that you can assume that if you're discussing business with somebody from one business person to another and you are discussing something that is going to be new and unique . . . . I think [the fact that it is confidential is] understood." (Dep. Perdue, 58:4-15.)

Perdue's assertion of general business practices alone is insufficient to demonstrate confidentiality based on course of dealing or industry practice.  Perdue had no course of dealing with LSI regarding use of ideas.  Additionally, Perdue has offered nothing about the circumstances that, according to industry standards, required confidentiality. *See, e.g. Whitfield v. Lear*, 751 F.2d 90, 93 (C.A.N.Y.,1984) (finding question of industry practice where Plaintiff asserted that it is well known within the television industry that if "a studio or producer is notified that a script is forthcoming and opens and reviews it when it arrives, that studio or producer has by custom implicitly promised to pay for the ideas if used."); *Vantage Point, Inc. v. ParkerBros, Inc.*, 529 F.Supp. 1204 (D.C.N.Y. 1981) (holding that jury could

B. *Count III: Conversion*

Defendant argues that Plaintiffs cannot maintain a claim for conversion because they had already disclosed the invention to the public by installing it at the Tom Thumb store and because they voluntarily disclosed it to the Defendants without imposing any conditions. Plaintiff responds only that intangible personal property can be the basis of a conversion action.

Under Alabama law, "to establish conversion, one must present proof of (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of another's property or (4) a wrongful detention of another's property." *Crown Life Ins. Co. v. Smith*, 657 S.2d 821, 823 (Ala. 1994). To maintain a claim, "a plaintiff must have both title to and a right of possession in the allegedly converted property to maintain a claim." *Charles R. Hall Motors v. Lewis*, 137 F.3d 1280, 1283 (11th Cir. 1998) (citing *Huntsville Golf Dev., Inc. v. Ratcliff, Inc.*, 646 So.2d 1334, 1336 (Ala. 1994)).

Defendant's first argument that Plaintiffs had no property right in the invention fails. In support of their argument, they rely upon cases such as *Monumental Properties of Georgia, Inc. v. Frontier Disposal, Inc.*, 282 S.E.2d 660, 663-64 (Ga. App., 1981), which

_____

infer from "Milton Bradley's decision to adopt and formalize its submissions procedures" that ideas submitted by those means were to be paid for if used). Even assuming that Perdue spoke with someone in the LSI's design and engineering department, Perdue has not established that there were industry standards regarding the use of ideas disclosed in unsolicited phone calls. Plaintiffs have failed to present sufficient facts to create a genuine issue of material fact.

8

states that "[a] property right in the unpatented product is only exclusive until it becomes the property of the public by being placed on the market." *See also Decorative Aides Corp. v. Staple Sewing Aides Corp.*, 497 F.Supp. 154, 161 (S.D.N.Y. 1980) (denying recovery because "plaintiff was already exploiting his product commercially.") However, the light retrofit kit at issue, like the product in *Monumental Properties*, was not public property because it was not "available in the marketplace." 282 S.E.2d at 663. Nothing in the record, including the fact that Perdue used his design to install eight lights prior to contacting LSI, indicates that the product had been placed on the market or that he was exploiting it commercially. It was not available for purchase as a product nor was Perdue routinely utilizing it in the course of his own business. Therefore, Plaintiffs are not prohibited from maintaining a claim for conversion on this basis.

However, the Defendant correctly asserts that the Plaintiffs have failed to demonstrate that the Defendant wrongfully or illegally took Plaintiffs' invention, as required by Alabama law. For the taking to have been wrongful, the Plaintiffs must show that they disclosed the idea in confidence or that the use of the idea violated some duty or agreement between the parties. *See, e.g. Jones v. Turner Broad. Sys., Inc.*, 389 S.E.2d 9, 11 (Ga.Ap. 1989) (requiring as an element of a claim for conversion of an unpatented idea that "the disclosure of the idea must be made in confidence."); *see also Monumental Prop.*, 282 S.E.2d at 663 (holding in the trade secret context that "the duty not to misuse the property of appellee must have arisen out of a contract or some confidential relationship existing between the parties").

9

Because, as stated above, the Plaintiffs have failed to demonstrate the existence of an implied contract or an implication of confidentiality based on course of dealing or industry custom, they have not demonstrated that the Defendant's use of the idea was wrongful. Therefore, the Defendant's Motion for Summary Judgment is due to be GRANTED as to the claim of conversion.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that LSI's Motion for Summary Judgment (Doc. #19) is GRANTED. A separate final judgment will be entered consistent with this Memorandum Opinion and Order.

DONE this 9th day of June, 2005.

_____/s/ Mark E. Fuller_____
CHIEF UNITED STATES DISTRICT JUDGE